UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHADI SHEIBANI,<br><br>　　　　　　*Plaintiff*,<br><br>　　v.<br><br>MERRICK GARLAND et al.,<br><br>　　　　　　*Defendants*. | Civil Action No. 23-2773 (TJK) |

**MEMORANDUM**

Dr. Siamak Ghanavati received a J-1 visa for a visiting scholar position in the United States. His wife, Plaintiff Dr. Shadi Sheibani, applied for a derivative J-2 visa to accompany him. But she had her application refused and then placed in further administrative processing. She has been waiting about two years since then, which she says is too long. In September 2023, she brought this mandamus petition to compel a decision on her application. Defendants, several government officials purportedly responsible for the delay, move to dismiss on several grounds. The Court lacks subject-matter jurisdiction over claims against some Defendants and will dismiss them for that reason. As for those that remain, Plaintiff's allegations fail to state a claim for unreasonable delay. So the Court will grant Defendants' motion and dismiss the case.

**I.　Background**

Plaintiff is a citizen of Iran. ECF No. 1 ¶ 16. Her husband holds a J-1 visa for a research position in Miami. *Id.* ¶ 18. A J-1 visa is the way an alien who is a scholar or a specialist can enter the United States. *See* 8 U.S.C. § 1101(a)(15)(J). And a J-2 visa allows the "spouse and minor children" of a J-1 visa holder to join him in the United States. *Id.* In April 2019, Plaintiff applied for a derivative J-2 visa. ECF No. 1 ¶ 19.

To obtain a J-2 visa, an applicant must file an online Nonimmigrant Visa Application, or Form DS-160. 22 C.F.R. § 41.103(a). The applicant must then interview with a consular officer. *See* 8 U.S.C. § 1202(h) ("[T]he Secretary of State shall require every alien applying for a nonimmigrant visa" to appear for an interview.). The consular officer then determines the "alien's eligibility to receive a visa." 22 C.F.R. § 41.102(a). Throughout this process, the applicant bears the burden of establishing eligibility. 8 U.S.C. § 1361.

After the interview, once the application has been properly completed, "the consular officer must issue the visa [or] refuse the visa." 22 C.F.R. § 41.121(a). A refusal of a nonimmigrant visa "must be based on legal grounds, such as . . . INA 221(g)." *Id.* A § 221(g) refusal is warranted if it appears from the application that the alien is ineligible for a visa under any "provision of law" or if the "officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g). If the consular officer refuses the application, he must "inform the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." 22 C.F.R. § 41.121(b)(1).

Congress further restricted how certain visas are issued in the Enhanced Border Security and Visa Entry Reform Act of 2002. That Act prohibits visas from being issued to aliens from countries that have been designated state sponsors of terrorism "unless the Secretary of State determines . . . that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Plaintiff is from Iran, which has been designated a state sponsor of terrorism since 1984. *See* U.S. Dep't of State, *State Sponsors of Terrorism* (last visited June 17, 2024), https://www.state.gov/state-sponsors-of-terrorism.

Plaintiff completed her Form DS-160 in April 2019. ECF No. 1 ¶ 19. She then attended her interview at the U.S. Embassy in Muscat, Oman, in June 2022. *Id.* ¶ 20. After the interview,

her application was issued a § 221(g) refusal and placed in further administrative processing. *See id.*; Dep't of State, Consular Elec. Application Ctr., *Visa Status Check*, available at https://ceac.state.gov/CEACStatTracker/Status.aspx (using case number, showing application was "Refused"). Plaintiff sued in September 2023, about fifteen months later. She alleges, invoking both the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361, that a consular officer has unlawfully withheld or unreasonably delayed adjudicating her visa application. *See generally* ECF No. 1. She requests that the Court "direct[] Defendants to adjudicate [her] visa application within 10 days of the date of the [Court's] order." *Id.* at 18. Defendants now move to dismiss for both lack of subject-matter jurisdiction and for failure to state a claim.

## II.     Legal Standards

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must establish the Court's subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When evaluating a Rule 12(b)(1) motion, the Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' . . . and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Without subject-matter jurisdiction over a claim, the Court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant can move to dismiss an action for "failure to state a claim upon which relief can be granted." To survive at this stage, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he Court must construe the complaint 'in favor of the plaintiff, who must be granted

the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). Yet even assuming all the facts are true, the complaint has to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[M]ere conclusory statements" will not be enough to establish that a claim is plausible on its face. *Iqbal*, 556 U.S. at 678.

## III.     Analysis

The Court has subject-matter jurisdiction over Plaintiff's claims of unreasonable delay in processing her application, although not over those against the Secretary of Homeland Security and the Attorney General. But as for those Defendants that remain, Plaintiff has failed to state a claim for unreasonable delay. So while Defendants raise several other non-jurisdictional arguments for dismissal in their motion, the Court need not address them. *See, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 n.6 (D.D.C. 2021) (declining to address consular nonreviewability and other arguments in unreasonable delay case after examining *TRAC* factors).

### A.     Plaintiff Lacks Standing to Sue the Secretary of Homeland Security and the Attorney General

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), of which "the core component of standing is an essential and unchanging part," *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendants argue that Plaintiff lacks standing for two reasons. First, they argue, noncitizens have no right to a visa or to travel to the United States such that they have pleaded a cognizable injury. And second, any injury is

4

not redressable because § 1735(a) dictates that their applications would be refused anyway. As many judges in this District have already found, she is wrong on both counts.

First, Plaintiff has sufficiently alleged an injury-in-fact. Although she does "not claim a right to a visa or to travel to the United States," she does "allege that the processing of [her] application[] has been unreasonably delayed and that this delay has injured" her by keeping her from joining her family in the United States. *Babaei v. U.S. Dep't of State*, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *3 (D.D.C. Mar. 19, 2024). As other judges in this District have consistently held, these types of allegations are enough to support an injury-in-fact. *See, e.g.*, *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (holding that Iranian nationals who applied for non-immigrant visas and alleged unreasonable delay in processing those applications had alleged an injury-in-fact). Second, Plaintiff's injuries are redressable. True, an order compelling further processing of her visa application might not result in a decision in her favor. But Plaintiff's alleged injury is unreasonable delay, which "would be redressed by a decision, one way or the other." *Babaei*, 2024 WL 1178453, at *3.

Defendants also argue that Plaintiff lacks standing to bring her claims against some of them specifically. To establish standing as to each defendant, Plaintiff must show that her injuries are "causal[ly] connect[ed]" to each defendant's conduct and "likely" can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.

The Court agrees that Plaintiff lacks standing to sue the Secretary of Homeland Security and the Attorney General because she has failed to establish the causation and redressability prongs against these officials. For example, her petition offers no factual allegations that the Department of Homeland Security "could take [any action] to hasten review of [her] application[]." *Rashidi v. U.S. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023)

(dismissing unreasonable delay claims against the Department of Homeland Security and Secretary Alejandro Mayorkas in unreasonable-delay case). Nor does Plaintiff "allege any involvement of . . . the Attorney General . . . with respect to [her] visa application[]." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75 (D.D.C. 2022) (dismissing Attorney General from immigration mandamus suit). Thus, the Court will dismiss the claims against them for lack of subject-matter jurisdiction.

As for the remaining Defendants—various State Department officials—the Court is unpersuaded that she lacks standing to sue them. Plaintiff has alleged that these officials either have "supervisory authority" over the "visa application and adjudication process," ECF No. 1 ¶ 8, or are "charged with oversight of all consular matters, including non-immigrant visas," *id.* ¶ 9. As a general matter, such allegations suffice to establish these parties as properly named defendants. *See, e.g.*, *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024); *Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023).

**B.     Plaintiff Has Failed to State a Claim for Unreasonable Delay Under the APA or the Mandamus Act**

Plaintiff brings her claim under § 706(1) of the APA and under the Mandamus Act, 28 U.S.C. § 1361. *See* ECF No. 1 ¶¶ 51–69. The Court reviews unreasonable delay claims under these statutes by applying the same legal standard. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). In essence, the Court must determine "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.* 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted).

To help guide this inquiry, the D.C. Circuit has laid out a six-factor test:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory

>   scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed.

*Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up); *see also Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). Courts often address the factors by addressing them under "four basic inquiries." *Rashidi*, 2023 WL 6460030, at *4.

> "First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?"

*Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

### 1. *TRAC* Factors 1 and 2

These factors evaluate "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Plaintiff references 8 U.S.C. § 1571(b)

to supply a timetable: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But this language is "aspirational, rather than mandatory," *Shen v. Pompeo*, No. 20-cv-1263 (ABJ) 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021), and "best interpreted as nonbinding," *Palakuru, v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021). Although the D.C. Circuit has found that this factor might "somewhat favor[]" a plaintiff once the 180-day threshold has been passed, the delay still needs to "reach[] the level of disproportionality we have previously held sufficient to grant relief." *Da Costa*, 80 F.4th at 344 (referencing a nineteen-year delay). This two-year period does not approach that level of delay.

Without such a disproportionate delay, the Court recognizes that "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54. And because there is no "set timeline, the Court looks to case law for guidance." *Dastagir*, 557 F. Supp. 3d at 165. In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable. 80 F.4th at 342. And "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Lee*, 2024 WL 639635, at *4 (citation omitted). Further, "delays of around two years are usually considered reasonable." *Noori v. Blinken*, No. 23-cv-1463 (TJK), 2024 WL 939990 (D.D.C. Mar. 5, 2024); *see also Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."). Because "[c]ourts measure the period of delay from the last government action to the issuance of the opinion," *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022), Plaintiff's wait time comes to roughly 24 months, as her consular interview took place in June 2022. And that two-year waiting period

falls well within what our jurisdiction has consistently determined not to be unreasonable. Factors one and two, taken together, clearly favor Defendants.

### 2. *TRAC* Factor 4

The fourth factor "carries the greatest weight in many cases." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). It examines the effect of expediting Plaintiff's application on the agency's other competing priorities. *TRAC*, 750 F.2d at 80. Courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–75 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75).

That is exactly would happen here if Plaintiff receives her requested relief. Ordering consular officials to process her application on her preferred timeline would "necessarily require [the agency] to prioritize [her] application[] 'at the expense of other similarly situated applicants.'" *Rashidi*, 2023 WL 6460030, at *5 (quoting *Da Costa*, 80 F.4th at 344). And this "would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Factor four thus heavily favors Defendants.

### 3. *TRAC* Factors 3 and 5

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare." *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Plaintiff alleges having suffered "devastating" consequences. ECF No. 1 ¶ 28. She is separated from her husband

and son and cannot perform her caretaking duties as a wife and mother. *Id.* Her family life has been upended because she does not have a visa. *Id.* Moreover, her family has the added financial strain of managing two separate households. *Id.* ¶ 29.

The Court is sympathetic to these hardships. Yet Plaintiff is no different than many others in similar circumstances. *Palakuru*, 521 F. Supp. 3d at 53 ("While the Court does not doubt that [Plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances."). "Thus, these factors largely do not weigh in Plaintiff['s] favor because there is no reason why [her] private interests in 'health and welfare' deserve special treatment relative to other visa applicants' interest in the same." *Noori*, 2024 WL 939990, at *4. And even if they do weigh in her favor to some extent, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'" *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

    **4.**  ***TRAC* Factor 6**

Factor six insists that a Plaintiff need not show bad faith or impropriety on the part of the agency to prevail on an unreasonable delay claim. Plaintiff does not assert that the agency is acting in bad faith. ECF No. 7 at 42. So this factor is neutral.

           \* \* \*

The Court takes notice of the "troubling backlog of petitions waiting for . . . adjudication." *Da Costa*, 80 F.4th at 344. As the D.C. Circuit has noted, those problems are serious. *Id.* But, weighing the *TRAC* factors, Plaintiff has not plausibly alleged that her delay is unreasonable. In fact, her wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021).

## IV.     Conclusion

For all these reasons, the Court will grant Defendants' motion and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 18, 2024